UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGELIO MAY RUIZ, | 1:19-cv-00048-AWI-GSA-PC |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED AGAINST DEFENDANTS** |
| vs. | **OROZCO AND HERNANDEZ ON PLAINTIFF'S EXCESSIVE FORCE** |
| J. OROZCO, et al., | **CLAIMS, AGAINST DEFENDANT OROZCO ON PLAINTIFF'S MEDICAL** |
| Defendants. | **CLAIM, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED, WITH PREJUDICE, FOR PLAINTIFF'S FAILURE TO STATE A CLAIM** |
| | **(ECF No. 22.)** |
| | **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

I.      **BACKGROUND**

        Rogelio May Ruiz ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On December 12, 2018, Plaintiff filed the Complaint commencing this action.  (ECF No. 1.)  On December 17, 2018, Plaintiff filed 182 pages of exhibits.  (ECF No. 6.)  On February 5, 2019, the court issued an order striking the exhibits as filed in violation of Local Rule 220 and granting Plaintiff leave to file an amended complaint within 30 days.  (ECF No. 17.)  On February 25, 2019, Plaintiff filed the First Amended Complaint.  (ECF No. 18.)  On April 27, 2020, the court issued an order requiring Plaintiff to either file a Second Amended Complaint or notify the court of his willingness to proceed only against defendants Orozco and Hernandez for use of excessive force.  (ECF No. 21.)  On May 27, 2020, Plaintiff filed the Second Amended Complaint which is now before the court for screening.  28 U.S.C. § 1915A.  (ECF No. 22.)

## II.      SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  While factual allegations are accepted as true, legal conclusions are not.  Id.  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

## III.     SUMMARY OF SECOND AMENDED COMPLAINT

Plaintiff is presently incarcerated at California State Prison-Sacramento in Represa, California.  The events at issue in the Second Amended Complaint allegedly occurred at Kern Valley State Prison (KVSP) in Delano, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR).  Plaintiff names as defendants Correctional Officer (C/O) J. Orozco, C/O N. Hernandez, and a Jane Doe Defendant (Female C/O), (collectively, "Defendants").

Plaintiff's allegations follow:

On November 11, 2017, at 7:30am, defendant Jane Doe (C/O) walked by Plaintiff's cell #118 door without giving him breakfast.  She asked Plaintiff to turn on the light, observed Plaintiff turn on the light, and then passed by his cell not stopping until she was in front of cell #119.  When defendant Jane Doe stopped at the next cell door Plaintiff asked her six or eight times for his tray, but she answered, "Eat sh** you are fu**ing Chamo," and kept going.  (2ACP , ECF No. 22 at 2:5.)[1]

At 8:30am, Plaintiff came out for his medication and immediately told defendants C/O Orozco and C/O Hernandez that defendant Jane Doe refused to give him meals and asked them if they could get his meals.  Defendant Orozco told Plaintiff it was too late, told Plaintiff to eat sh** because he is a piece of sh**and that's why Jane Doe gave him nothing, and told Plaintiff to get out of here.  (2ACP at 2:11-13.)  Plaintiff said "Okay" and asked if he could talk with the Sergeant, but Orozco said no.  (2ACP at 2:13.)   Plaintiff told Orozco that if he didn't want to do his job Plaintiff would refuse to lock up.

When Plaintiff returned after getting medication, he took a plastic chair and sat in the middle of the doorway.  Orozco pulled out the chair and Plaintiff sat down in the middle of the doorway, yelled, "Man down," and told Orozco that he (Plaintiff) needed an interpreter and needed to talk with the Sergeant  about his breakfast.  (2ACP at 2:21-23.)  Orozco began kicking Plaintiff and hit Plaintiff in the eye breaking his cornea which began to bleed, and began twisting Plaintiff's right arm.  Plaintiff could not stand the pain and placed his face on the floor.  Then Orozco said, "Ooo, you are resisting arrest, I'm going to falsely charge you and kick your fu**ing a**."  (2ACP at 2:1-3.)  Defendant Orozco racially discriminated against Plaintiff when he used bad language about race.  Orozco again kicked Plaintiff who was now seated in his cell.  Plaintiff waited for Orozco to leave, but Orozco did not leave.  Plaintiff did not want to stand up because he knew Orozco would attack him again.  Plaintiff waited five minutes but both of the officers

---

[1] All page numbers cited herein are those assigned by the court's CM/ECF system and not based on Plaintiff's pagination of his complaint.

remained there.  Plaintiff decided to stand up and told them he just wanted his breakfast.  Plaintiff turned around and tried to walk over to his bed and sit down but Orozco suddenly struck his back twice and hips.  Then, without any warning, Orozco sprayed Plaintiff three times and said, "Get down!"  (2ACP at 3:14-16.)  Plaintiff immediately obeyed the order and lay down in a prone position, but Orozco continued to spray Plaintiff for more than ten seconds until his bottle of spray was emptied.

Orozco entered Plaintiff's cell and handcuffed Plaintiff who was already face down in a prone position.  Then, using both feet, he opened Plaintiff's legs, kicked his testicles four times, and struck his hips.  Plaintiff's left testicle became very swollen.  Plaintiff never tried to attack Orozco and did not throw the chair at Orozco.

Plaintiff is requesting witnesses who lived in cell #117 and #119 and watched everything because the Bakersfield court may give Plaintiff life for this false charge.  Plaintiff is attaching CDCR form 22 where he requested the identification of these three witnesses, and the identification of defendant Jane Doe who denied him breakfast and lunch.  KVSP did not respond to Plaintiff.  Plaintiff requests the court to withdraw the false charge given to Plaintiff by defendant Orozco.  Orozco lied when they put Plaintiff in the cage in front of the Sergeant's office.  When the Sergeant asked Orozco if he wanted to see the doctor, Orozco answered no, "I don't have nothing."  (2ACP at 3:10-12.)  Orozco racially discriminated against Plaintiff when he told him, "Fu** Mexican Indian, wet back."  (2ACP at 3:12-14.)

Defendant C/O N. Hernandez, in association with defendant Orozco, also acted against Plaintiff by harming and injuring him. On November 11, 2017, defendant Hernandez arrived at Plaintiff's cell #118.  After that, Plaintiff asked defendant Hernandez for his breakfast tray that defendant Jane Doe failed to provide Plaintiff.  But defendant Hernandez responded, "Eat sh**," and Plaintiff asked to talk with the Sergeant and an interpreter, but defendant Hernandez refused.  (2ACP at 13.) Plaintiff told Hernandez that if he wouldn't grant Plaintiff's requests, Plaintiff would refuse to lock down.  Plaintiff placed a chair in the middle of the doorway, which was taken by defendant Orozco, who gave it to Hernandez after spraying Plaintiff for no reason.  Then defendant Hernandez struck Plaintiff's back and right rib.  They said that Plaintiff tried to attack

4

Hernandez from the front, but that is a lie because Plaintiff was struck when he began to walk and tried to sit down on his bed.  That was when defendants Hernandez and Orozco struck his back and hit his face.  Plaintiff never offered resistance.  Hernandez racially discriminated against Plaintiff when he denied Plaintiff an interpreter, refused to allow Plaintiff to talk to the Sergeant, and denied him a food tray.  Plaintiff asked more than 6 times but was not allowed any intervention by the Sergeant.

After the attack by Orozco and Hernandez, they placed Plaintiff in a cage and defendant Jane Doe passed by in front of the cage.  Plaintiff asked her to identify herself  but she answered, "F**k you stupid Mexican, you're a piece of s**t, f**k Chilmo."  (2ACP at 7:21-22.)  Jane Doe violated CDCR rules because she would not identify herself.  She also violated Plaintiff's rights when she denied him breakfast and lunch.  She retaliated against Plaintiff when she talked about Plaintiff's conviction, and racially discriminated when she talked against Plaintiff's nationality.  Plaintiff requests an investigation by the court against defendant Jane Doe who violated Plaintiff's rights.  Plaintiff has attached a lot of CDCR forms with proof that Plaintiff requested information but was denied.  Jane Doe opened confidential legal mail on December 13, 2017, losing an order pertaining to case no. 16-cv-3134-JAH-N-LS sent from the Ninth Circuit to Plaintiff, and the court dismissed the case and gave Plaintiff a strike on his record.  Plaintiff requests the court to take legal action against defendant Jane Doe and order that anyone in any prison is required to show identification.

Orozco denied Plaintiff's request to talk to the Sergeant, who holds a higher level position than Orozco who took the law in his own hands, unlawfully attacking Plaintiff when he was defenseless and handcuffed.  Orozco deprived Plaintiff of his rights when he knew that Plaintiff doesn't speak English because two weeks ago he himself used an interpreter.  Orozco knew that Plaintiff did not receive his breakfast and lunch.  Orozco asserted that Plaintiff threw the chair a distance of 15 feet from the dayroom, but he also stated that Plaintiff was in his assigned cell.  Plaintiff couldn't have thrown the chair if he was in his cell.  Orozco first stated to the court that Plaintiff threw the chair to him from a distance of three feet.  Then in his second declaration he stated that Plaintiff threw the chair 15 feet.  Orozco injured Plaintiff's testicles, eyes, and both

hips.  He did not allow Plaintiff to decontaminate from the pepper spray and let it stay on Plaintiff in the cage for more than six hours without breakfast or lunch.  Plaintiff is attaching all proof of medical care for his injuries at the outside hospital, and CDCR documents from the false RVR log # KVSP 3698617, showing how KVSP refused to allow all of Plaintiff's witnesses.  They also made mistakes in the investigation, interviewing an inmate in cell #310 when Plaintiff requested the inmate in cell #120.  Plaintiff requests that all charges against him be withdrawn, like the false 115 RVR and the arrest charges at the court on February 18, 2020.  Plaintiff requests monetary compensation for all damages against him.  Plaintiff never gave them one reason to arrest him.  When Orozco removed the chair he committed an unlawful act.  When Plaintiff was seated on the floor, Orozco struck and kicked Plaintiff when there was no reason for use of force. It was not in good faith, Plaintiff never attacked with the chair and never was a threat to anyone. Officer Orozco himself stated that Plaintiff was in his cell and then he lied by saying that he attacked Plaintiff in the dayroom.  Plaintiff requests further investigation by the court.

Plaintiff was hungry for more than 9 hours and injured psychologically, scared about retaliation and frustration.

As relief, Plaintiff requests an investigation into defendant Jane Doe to discover why she doesn't show anyone her identification, and to take further legal action against her.  Plaintiff requests that video cameras be placed in all prison dayrooms and other places.  Plaintiff requests further legal action against C/O Orozco and C/O Hernandez and monetary compensation for all injuries against Plaintiff.

## IV.   PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a

method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."  Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.   Excessive Force -- Eighth Amendment Claim

Plaintiff brings a claim for excessive force under the Eighth Amendment against defendants Orozco and Hernandez.  "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency."  Hudson v. McMillian, 503 U.S. 1, 8 (1992) (internal quotation marks and citations omitted).  The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of

whether or not significant injury is evident.  Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)).  "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Id. at 7.  "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  Id. (internal quotation marks and citations omitted).  "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."  Id.

Here, the court finds that Plaintiff states cognizable claims against defendants Orozco and Hernandez for use of excessive force in violation of the Eighth Amendment.

### B.   Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim.  Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).  The Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be

retaliatory." Pratt, 65 F.3d at 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

Plaintiff alleges that defendant Jane Doe retaliated against Plaintiff when she talked about Plaintiff's conviction. Plaintiff has not explained why talking about his conviction was an adverse action against him. However, even assuming that defendant Jane Doe's talking was an adverse action, Plaintiff fails to state a claim for retaliation because Plaintiff has not shown that Jane Doe acted against Plaintiff *because* Plaintiff was exercising his rights protected under the First Amendment. Plaintiff has not established any link or causal connection between Jane Doe's adverse action and Plaintiff's exercise of First Amendment rights. In fact, Plaintiff has not identified a protected right under the First Amendment that he was exercising. Therefore, Plaintiff fails to state a claim for retaliation against defendant Jane Doe or any of the other Defendants.

### C.   Equal Protection Clause -- Fourteenth Amendment

The Equal Protection Clause requires the State to treat all similarly situated people equally. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). This does not mean, however, that all prisoners must receive identical treatment and resources. See Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972); Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993); Allen v. Toombs, 827 F.2d 563, 568–69 (9th Cir. 1987).

"To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts plausibly showing that 'the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class,'" (citing see Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting Lee v. City of Los Angeles, 250 U.S. 668, 686 (9th Cir. 2001)), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

///

Plaintiff alleges that all of the Defendants called him names and used bad language against him.   More specifically, Plaintiff alleges that Jane Doe told Plaintiff, "Eat sh** you are fu**ing Chamo," when Plaintiff asked her for his breakfast tray; that Defendant Orozco told Plaintiff to "eat sh** because he is a piece of sh**" and used bad language about Plaintiff's race, e.g., "F**k Mexican Indian, wet back;" and that defendant Hernandez racially discriminated against Plaintiff when he denied Plaintiff an interpreter, refused to allow Plaintiff to talk to the Sergeant, and denied him a food tray.   Plaintiff also alleges that defendant Orozco said, "Ooo, you are resisting arrest, I'm going to falsely charge you and kick your fu**ing a**."

None of this conduct by defendants, although very offensive and disgusting if true, without more, rises to the level of a violation of the Equal Protection Clause.   Plaintiff uses conclusory language claiming he was discriminated against and he does not allege facts showing discrimination.   Offensive language, without more, does not violate equal protection.   Mere verbal harassment or abuse, including the use of racial epithets, does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983.   Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).   Even threats do not rise to the level of a constitutional violation.   Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).   Therefore, Plaintiff has not demonstrated that he was discriminated against on the basis of his race, or that he was intentionally treated differently than other similarly situated individuals, without a rational relationship to a legitimate state purpose.

Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection against any of the Defendants.

**D.**   **Medical Claim**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"   Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).   The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury

or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." <u>Jett</u>, 439 F.3d at 1096 (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> by <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (<i>en banc</i>) (internal quotations omitted)).  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." <u>Id.</u> (citing <u>McGuckin</u>, 974 F.2d at 1060).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." <u>Id.</u> Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs.  <u>McGuckin</u> at 1060 (citing <u>Shapely v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985)).

 "Deliberate indifference is a high legal standard." <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" <u>Id.</u> at 1057 (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" <u>Id.</u> (quoting <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1188 (9th Cir. 2002)).  "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." <u>Id.</u> at 1060.  "[E]ven gross negligence is insufficient to establish a constitutional violation." <u>Id.</u> (citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990)).

Plaintiff alleges that defendant Orozco sprayed Plaintiff with pepper spray for more than ten seconds until his bottle of spray was empty.  Afterward, defendant Orozco did not allow Plaintiff to decontaminate himself from the pepper spray for more than six hours while Plaintiff was in a cage.  This allegation is sufficient to state a claim for inadequate medical care.

Therefore, Plaintiff states a medical claim against defendant Orozco.

**E.    <u>False Reports</u>**

Plaintiff alleges that defendant Orozco wrote false disciplinary reports against Plaintiff, claiming that Plaintiff threw a chair at him.  Plaintiff was issued a false 115 RVR (Rules Violation Report) and falsely arrested because of the false charges.  Plaintiff also states that he is concerned that the Bakersfield court may give Plaintiff life for this false charge.  Plaintiff requests that all charges against him be withdrawn, like the false 115 RVR and the arrest charges at the court on February 18, 2020.

These allegations of false charges, even if true, do not raise a constitutional claim against defendant Orozco because there is no due process right to be free from false disciplinary charges. The falsification of a disciplinary report does not state a standalone constitutional claim.  Canovas v. California Dept. of Corrections, 2:14-cv-2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. 2014); see e.g., Lee v. Whitten, 2:12-cv-2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012). There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.  Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Jones v. Woodward, 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983)).  Therefore, Plaintiff has no protected liberty interest against false information being reported against him.

## F.    Denial of Meals – Eighth Amendment Claim

Plaintiff alleges that defendant Jane Doe deprived him of breakfast and lunch on a single day, causing Plaintiff to be hungry for more than 9 hours and become psychologically distressed because he was scared about retaliation and frustration.

To state a claim for cruel and unusual punishment, Plaintiff must allege facts sufficient to show that the conditions of his confinement subjected him to "unquestioned and serious deprivations of basic human needs." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Wilson v. Seiter, 501 U.S. 294, 298-300 (1991).  The Eighth Amendment "does not mandate comfortable

prisons," and conditions imposed may be "restrictive and even harsh." <u>Rhodes</u>, 452 U.S. at 347, 349.

The Eighth Amendment protects a prisoner's right to receive food "adequate to maintain health." <u>Owens v. Defazio</u>, No. 216CV2750JAMKJNP, 2017 WL 4386051, at *6 (E.D. Cal. 2017), <u>report and recommendation adopted sub nom</u> <u>Owens v. Defazio</u>, No. 216CV2750JAMKJNP, 2018 WL 1377784 (E.D. Cal. 2018) (quoting <u>Lemaire v. Maas</u>, 12 F.3d 1444, 1456 (9th Cir. 1993); <u>Keenan v. Hall</u>, 83 F.3d 1083, 1091 (9th Cir. 1996). The Ninth Circuit has held that the "sustained deprivation of food can be cruel and unusual punishment when it results in pain without any penological purpose." <u>Foster v. Runnels</u>, 554 F.3d 807, 812-13 (9th Cir. 2009). Denial of 16 meals in 23 days "is a sufficiently serious deprivation because food is one of life's basic necessities." <u>Owens</u>, 2017 WL 4386051, at *6 (quoting <u>Foster</u>, 554 F.3d at 812–13. In <u>Foster</u>, the court did not reach the conclusion whether the meals plaintiff did receive were adequate to maintain his health. <u>Owens</u>, 2017 WL 4386051, at *6. Other cases finding a sufficiently serious deprivation involve the plaintiff being deprived of food entirely for more than two consecutive days. <u>Id.</u> (citing <u>see</u> <u>Dearman v. Woodson</u>, 429 F.2d 1288, 1289 (10th. Cir. 1970) (no food for twelve days); <u>Reed v. McBride</u>, 178 F.3d 849, 853 (7th Cir. 1999) ("infirm" plaintiff did not receive food for 3–4 days at a time); <u>Robles v. Coughlin</u>, 725 F.2d 12, 16 (2d Cir. 1983) (no food for 12 days, some consecutive, out of 53–day period). In another case, the Eighth Circuit found that depriving plaintiff of four consecutive meals in two days is a sufficiently serious deprivation. <u>Simmons v. Cook</u>, 154 F.3d 805, 809 (8th Cir. 1998).

Here, Plaintiff claims he was denied two meals during the same day, which without a basis for justification would appear to be inexcusable, are insufficient allegations to show that he had a "sustained deprivation" of nutrition that would rise to the level of an Eighth Amendment violation. Therefore, based on the case law discussed above the undersigned finds that such facts as presented fails to state a claim under the Eighth Amendment.

## G.   State Law Claim

Plaintiff alleges that defendant Jane Doe violated CDCR rules because she would not identify herself to Plaintiff. This is a state law claim. Plaintiff is informed that violation of state

tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983.   Section 1983 does not provide a cause of action for violations of state law.   See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007). To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.   See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002).   Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law.   See 28 U.S.C. § 1367.   In this instance, the Court has found cognizable § 1983 claims in the Second Amended Complaint against defendants Orozco and Hernandez.

Plaintiff has not provided sufficient information for the court to determine if Plaintiff states a cognizable state law claim against defendant Jane Doe for violation of a CDCR rule. Plaintiff has not identified the statute, rule, or regulation at issue, or informed the court whether a private right of action exists upon which he can proceed.   Therefore, the court recommends declining to  exercise supplemental jurisdiction over this alleged claim.

Also, Plaintiff has not alleged in the complaint that he complied with the Government Claims Act, which requires exhaustion of state law claims with California's Victim Compensation and Government Claims Board.   Plaintiff is required to  specifically allege compliance in his complaint.   Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 208-09 (Cal. 2007); State v. Superior Court of Kings Cnty. (Bodde), 32 Cal.4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).   Plaintiff has not done so.

Therefore, Plaintiff fails to state a cognizable claim against defendant Jane Doe for violation of a CDCR rule.

**H.     Due Process**

The Due Process Clause protects against the deprivation of liberty without due process of law.   Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005).   In order to invoke

the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  Id.  Liberty interests may arise from the Due Process Clause itself or from state law.  Id.

The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation.  See Hewitt v. Helms, 459 U.S. 460, 466-68 (1983); see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation.  Sandin, 515 U.S. at 481-84.  Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

Plaintiff alleges that at his disciplinary hearing the charges against him were false, he was not allowed all of his witnesses, and he was sentenced to three years in the "hole" when he was found guilty of the disciplinary rule.

As discussed above in "False Reports" in this order, there is no due process right to be free from false disciplinary charges.  "[T]he fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue."  Jones, 2015 WL 1014257, *2 (citing Ricker, 25 F.3d at 1410; McCrae, 720 F.2d at 868)).

As for Plaintiff's term in administrative segregation, Plaintiff's Second Amended Complaint does not contain any allegations demonstrating that the conditions he was subjected

to while he was housed in administrative segregation imposed an atypical or significant hardship on him in relation to the ordinary incidents of prison life. Plaintiff's complaint fails to demonstrate that he had a liberty interest in freedom from being housed in administrative segregation, and therefore he cannot state a due process claim based on his placement in administrative segregation.

Plaintiff has not shown that he had a liberty interest for which he was entitled to due process, and therefore, Plaintiff fails to state a due process claim.

## I.     Free Speech

Plaintiff notes "Free Speech" in his complaint when referring to his claims.  (2ACP, ECF No. 22 at 12.)  The First Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech,...or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I; see Everson v. Board of Education, 330 U.S. 1, 15 (1947). Prisoners "clearly retain protections afforded by the First Amendment . . . ."  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citations omitted), superseded by statute on other grounds, 42 U.S.C. §§ 2000cc, et seq.

Plaintiff fails to make any allegations in the Second Amended Complaint that he was denied his freedom to speak or otherwise communicate.  Therefore, Plaintiff fails to state a claim for denial of free speech.

## J.     Mail Interference / Denial of Access to Courts

Plaintiff alleges that on December 13, 2017, defendant Jane Doe opened his confidential legal mail, losing an order pertaining to case no. 16-cv-3134-JAH-N-LS sent from the Ninth Circuit Court of Appeals to Plaintiff, and the court dismissed the case and gave Plaintiff a strike on his record.

## Mail Interference

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). Nevertheless, correctional institutions and jails have

16

a legitimate governmental interest in imposing certain restraints on inmate or detainee correspondence to maintain order and security. See Procunier v. Martinez, 416 U.S. 396, 413 (1974), overturned on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 413–14 (1989). For example, inmates and detainees may have their mail screened to ensure that there is no contraband inside. Mangiaracina v. Penzone, 849 F.3d 1191, 1195 (9th Cir. 2017).

When incoming mail is legal mail, there are heightened concerns with allowing prison officials unfettered discretion in opening and reading an inmate's mail. Prisoners have a Sixth Amendment right to confer privately with counsel and the practice of opening legal mail in the prisoner's presence is specifically designed to protect that right. Id. at 1196–97 (Sixth Amendment requires a pretrial detainee be present when legal mail related to a criminal matter is inspected; even a single incident of improper reading of a pretrial detainee's mail may give rise to a constitutional violation); Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1210 (9th Cir. 2017) (prisoners have a First Amendment right to have their properly marked legal mail, including civil mail, opened in their presence). "A criminal defendant's ability to communicate candidly and confidentially with his lawyer is essential to his defense." Id. at 1198 (quoting Nordstrom v. Ryan, 762 F.3d 903, 910 (9th Cir. 2014) ).

However, "[m]ail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." Keenan, 83 F.3d at 1094. "All correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files." Id. at 1094 (citing  Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987) ).  An order from the Court is not considered legal mail for purposes of First Amendment protection.  See Keenan, 83 F.3d at 1094 (concluding that mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail).  Therefore, Plaintiff's mail from the Ninth Circuit was not legal mail and Plaintiff fails to state a claim for interference of his legal mail under the First Amendment.

**Access to Courts**

Inmates have a fundamental constitutional right of access to the courts and prison officials may not actively interfere with Plaintiff's right to litigate. Lewis v. Casey, 518 U.S. 343, 346 (1996); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009).  However, mere inconvenience to

Plaintiff resulting from lost, misplaced, or confiscated legal documents will not suffice to support a constitutional claim. <u>Id.</u> at 1103–04.

Such claims may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). <u>Christopher v. Harbury</u>, 536 U.S. 403, 414, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). In essence, "forward-looking" claims allege that "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." <u>Id.</u> at 413. In these cases that have yet to be litigated, "the justification for recognizing that [forwardlooking] claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." Id.

"Where a prisoner asserts a backward-looking denial of access claim - one . . . seeking a remedy for a lost opportunity to present a legal claim - he must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." <u>Phillips</u>, 477 F.3d at 1076 (citing <u>Christopher</u>, 536 U.S. at 413–14, overruled on other grounds, <u>Hust v.</u> <u>Phillips</u>, 555 U.S. 1150, 129 S.Ct. 1036, 173 L.Ed.2d 466 (2009)).  In order to meet the requisite actual injury showing, a plaintiff must plead facts alleging "a nonfrivolous legal claim had been frustrated or was being impeded." <u>Lewis</u>, 518 U.S. at 353; <u>see</u> <u>also</u> <u>Christopher</u>, 536 U.S. at 415. "The complaint should 'state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a) just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it.'" <u>Gonzalez v. Diaz</u>, No. 1:10–CV–01287–GBC PC, 2011 WL 2671535 (E.D. Cal. July 6, 2011) (quoting <u>Christopher</u>, 536 U.S. at 417–18).

Plaintiff alleges that because his mail was lost by defendant Jane Doe, the court dismissed his case no. 16-cv-3134-JAH-N-LS and gave Plaintiff a strike on his record.  Plaintiff's allegations are not sufficient to state a denial of access to the courts claim because Plaintiff has not stated his underlying claim in the dismissed case, shown that the dismissed case was proceeding on a nonfrivolous claim, shown that defendant Jane Doe's actions caused the

dismissal, or shown that Plaintiff had a unique remedy if he prevailed in the case. Therefore, Plaintiff fails to state a claim for denial of access to the courts.

**K.**     **Relief Requested**

In addition to monetary damages, Plaintiff requests injunctive relief including an order requiring anyone in prison to show ID, an investigation into his claims, withdrawal of his disciplinary charges, and an order requiring that cameras be placed in the day rooms of all prisons.

Any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part:

> "The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."   18 U.S.C. § 3626(a)(1)(A).

Neither an investigation, the placing of video cameras at prisons, an order for officers to identify themselves, nor the withdrawal of the false disciplinary charges would remedy the past violation of Plaintiff's constitutional rights and therefore are not narrowly drawn to correct the alleged past violations.  Also, when a prisoner seeks injunctive relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. <u>Pride v. Correa</u>, 719 F.3d 1130, 1138 (9th Cir. 2013) ("When an inmate challenges prison conditions at a particular correctional facility, but has been transferred from the facility and has no reasonable expectation of returning, his claim is moot"); <u>Dilley v. Gunn</u>, 64 F.3d 1365, 1368-69 (9th Cir. 1995) (finding prisoner's suit for library access to be moot upon his transfer to another prison).  Once Plaintiff was transferred away from Kern Valley State Prison where the alleged violations occurred, any claims for injunctive relief regarding conditions at that institution became moot.

Based on the nature of the claims at issue in this action, which involve past conduct, Plaintiff is not entitled to injunctive relief and is therefore confined to seeking money damages for the violations of his federal rights.

## V.      CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the court finds that Plaintiff states cognizable claims in the Second Amended Complaint against defendants C/O J. Orozco and C/O N. Hernandez for use of excessive force in violation of the Eighth Amendment, and against defendant Orozco for failure to provide adequate medical care.  However, Plaintiff fails to state any other cognizable claims against any of the Defendants upon which relief may be granted under § 1983.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires."  Here, the court previously granted Plaintiff leave to amend the complaint with ample guidance by the court.  The court is persuaded that Plaintiff is unable to allege any facts, based upon the circumstances he challenges, that would state any additional cognizable claims.  "A district court may deny leave to amend when amendment would be futile."  Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013).  The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); Lopez, 203 F.3d at 1127.

Therefore, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.      This case proceed against defendants Orozco and Hernandez on Plaintiff's claims for excessive force, and against defendant Orozco on Plaintiff's medical claim, in violation of the Eighth Amendment, for money damages;

2.      All other claims and defendants be dismissed, with prejudice, based on Plaintiff's failure to state a claim upon which relief may be granted;

3.      Defendant Jane Doe (Correctional Officer) be dismissed from this case, with prejudice, based on Plaintiff's failure to state any cognizable claims against her;

4.      Plaintiff's claims for retaliation, violation of equal protection, false reports, denial of meals, violation of CDCR rule requiring officer to identify herself, violation of due process, denial of free speech, mail interference, and denial of access to courts be dismissed from this case based on Plaintiff's failure to state a claim upon which relief may be granted;

///

5.     The Clerk of Court reflect on the court's docket that this case now only proceeds against defendants Orozco and Hernandez; and

6.     This case be referred back to the Magistrate Judge for further proceedings, including initiation of service of process.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen days** of the date of service of these findings and recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 8, 2020**                          **/s/ Gary S. Austin**
                                                   UNITED STATES MAGISTRATE JUDGE